[No. S147190. Aug. 7, 2008.]

RAYMOND EDWARDS II, Plaintiff and Appellant, v.
ARTHUR ANDERSEN LLP, Defendant and Respondent.

938

COUNSEL

Law Offices of Richard A. Love, Richard A. Love, Beth A. Shenfeld; Greines, Martin, Stein & Richland, Marc J. Poster and Robin Meadow for Plaintiff and Appellant.

Kastner Banchero, Eric C. Kastner and Scott R. Raber as Amici Curiae on behalf of Plaintiff and Appellant.

Feldman Gale, James A. Gale, Todd M. Malynn and Michael J. Weber for St. Jude Medical, S.C., Inc., Pacesetter, Inc., and Advanced Bionics Corporation as Amici Curiae on behalf of Plaintiff and Appellant.

Law Offices of Jeffery K. Winikow and Jeffrey K. Winikow for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Mark A. Lemley; Morrison & Foerster and James Pooley for Professors and Writers of Learned Treatises as Amicus Curiae on behalf of Plaintiff and Appellant.

Latham & Watkins, Wayne S. Flick, Yury Kapgan, Kristine L. Wilkes, Colleen C. Smith, Shireen M. Becker; and Sharon A. McFadden for Defendant and Respondent.

Paul, Hastings, Janofsky & Walker, Paul Grossman and Jennifer S. Baldocchi for California Employment Law Council and Activision, Inc., as Amici Curiae on behalf of Defendant and Respondent.

O'Melveny & Myers, Scott H. Dunham and Christopher W. Decker for Employers Group as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

CHIN, J.—We granted review to address the validity of noncompetition agreements in California and the permissible scope of employment release agreements. We limited our review to the following issues: (1) To what extent does Business and Professions Code section 16600[1] prohibit employee noncompetition agreements; and (2) is a contract provision requiring an employee to release "any and all" claims unlawful because it encompasses

---

[1] All further unlabeled statutory references are to the Business and Professions Code.

nonwaivable statutory protections, such as the employee indemnity protection of Labor Code section 2802?

■ We conclude that section 16600 prohibits employee noncompetition agreements unless the agreement falls within a statutory exception, and that a contract provision whereby an employee releases "any and all" claims does not encompass nonwaivable statutory protections, such as the employee indemnity protection of Labor Code section 2802. We therefore affirm in part and reverse in part the Court of Appeal judgment.

## FACTS

In January 1997, Raymond Edwards II (Edwards), a certified public accountant, was hired as a tax manager by the Los Angeles office of the accounting firm Arthur Andersen LLP (Andersen). Andersen's employment offer was made contingent upon Edwards's signing a noncompetition agreement, which prohibited him from working for or soliciting certain Andersen clients for limited periods following his termination. The agreement was required of all managers, and read in relevant part: "If you leave the Firm, for eighteen months after release or resignation, you agree not to perform professional services of the type you provided for any client on which you worked during the eighteen months prior to release or resignation. This does not prohibit you from accepting employment with a client. [¶] For twelve months after you leave the Firm, you agree not to solicit (to perform professional services of the type you provided) any client of the office(s) to which you were assigned during the eighteen months preceding release or resignation. [¶] You agree not to solicit away from the Firm any of its professional personnel for eighteen months after release or resignation." Edwards signed the agreement.

Between 1997 and 2002, Edwards continued to work for Andersen, moving into the firm's private client services practice group, where he handled income, gift, and estate tax planning for individuals and entities with large incomes and net worth. Over this period he was promoted to senior manager and was on track to become a partner. In March 2002, the United States government indicted Andersen in connection with the investigation into Enron Corporation, and in June 2002, Andersen announced that it would cease its accounting practices in the United States. In April 2002, Andersen began selling off its practice groups to various entities. In May 2002, Andersen internally announced that HSBC USA, Inc. (a New York-based banking corporation), through a new subsidiary, Wealth and Tax Advisory Services (WTAS), would purchase a portion of Andersen's tax practice, including Edwards's group.

In July 2002, HSBC offered Edwards employment. Before hiring any of Andersen's employees, HSBC required them to execute a "Termination of Non-compete Agreement" (TONC) in order to obtain employment with HSBC. Among other things, the TONC required employees to, inter alia, (1) voluntarily resign from Andersen; (2) release Andersen from "any and all" claims, including "claims that in any way arise from or out of, are based upon or relate to Employee's employment by, association with or compensation from" defendant; (3) continue indefinitely to preserve confidential information and trade secrets except as otherwise required by a court or governmental agency; (4) refrain from disparaging Andersen or its related entities or partners; and (5) cooperate with Andersen in connection with any investigation of, or litigation against, Andersen. In exchange, Andersen would agree to accept Edwards's resignation, agree to Edwards's employment by HSBC, and release Edwards from the 1997 noncompetition agreement.

HSBC required that Andersen provide it with a completed TONC signed by every employee on the "Restricted Employees" list before the deal went through. At least one draft of the Restricted Employees list contained Edwards's name. Andersen would not release Edwards, or any other employee, from the noncompetition agreement unless that employee signed the TONC.

Edwards signed the HSBC offer letter, but he did not sign the TONC.[2] In response, Andersen terminated Edwards's employment and withheld severance benefits. HSBC withdrew its offer of employment to Edwards.

## PROCEDURAL HISTORY

On April 30, 2003, Edwards filed a complaint against Andersen, HSBC and WTAS for intentional interference with prospective economic advantage and anticompetitive business practices under the Cartwright Act (§ 16720 et seq.). Edwards alleged that the Andersen noncompetition agreement violated section 16600, which states "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." He further alleged that the TONC's release of "any and all" claims violated Labor Code sections 2802 and 2804, which make an employee's right to indemnification from his or her employer nonwaivable.

---

[2] Edwards's reasons for refusing to sign the TONC included the fact that he believed it required him to give up his right to indemnification, which he felt was particularly important in light of the government's investigation into the company. Edwards also believed several of Andersen's clients for whom he did work would sue Andersen and name him as a defendant, and if that were the case he wanted to ensure he retained his right to indemnification.

Edwards settled with all parties except Andersen. The trial court sustained Andersen's demurrer to Edwards's Cartwright Act claim without leave to amend, concluding Edwards lacked standing to bring the action. It then denied Andersen's subsequent motion for summary adjudication on Edwards's intentional interference with prospective economic advantage cause of action, after concluding that triable issues of fact existed on the meaning of the agreements, and whether the agreements protected trade secrets. The court then granted Andersen's motion to sever trial on the issue of the enforceability of the noncompetition agreement and the TONC. (Code Civ. Proc. §§ 598, 1048, subd. (b).) The court dismissed all claims against Andersen, except for those relating to intentional interference with prospective economic advantage, which it concluded presented pure questions of law.

The trial court heard argument from both parties, but took no evidence. The court determined all issues of law in favor of Andersen on the merits, and entered judgment in its favor. The court specifically decided that (1) the noncompetition agreement did not violate section 16600 because it was narrowly tailored and did not deprive Edwards of his right to pursue his profession; and (2) the TONC did not purport to waive Edwards's right to indemnification. Thus, requiring him to sign these documents was not unlawful. Edwards appealed the trial court's decision.

■ At issue in the Court of Appeal was one of the elements required to prove a claim for intentional interference with prospective economic advantage. In order to prove a claim for intentional interference with prospective economic advantage, a plaintiff has the burden of proving five elements: (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–1154 [131 Cal.Rptr.2d 29, 63 P.3d 937].) The plaintiff must also prove that the interference was wrongful, independent of its interfering character. (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392–393 [45 Cal.Rptr.2d 436, 902 P.2d 740].) "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Korea Supply Co., supra,* 29 Cal.4th at p. 1159.)

At issue here is the third element of the tort. In the Court of Appeal, Edwards argued the independently wrongful acts requirement in this case was

met in several ways that are pertinent here: (1) the noncompetition agreement was illegal under section 16600, making Andersen's demand that he give consideration to be released from it against public policy; (2) the TONC's additional release of "any and all" claims constituted a waiver of his indemnity rights in violation of Labor Code sections 2802 and 2804; and (3) the TONC's nondisparagement clause violated Labor Code section 1102.5.

In the published part of its opinion, the Court of Appeal held: (1) the noncompetition agreement was invalid under section 16600, and requiring Edwards to sign the TONC as consideration to be released from it was an independently wrongful act for purposes of the elements of Edwards's claim for intentional interference with prospective economic advantage; (2) the TONC purported to waive Edwards's indemnification rights under the Labor Code and was therefore in violation of public policy and an independently wrongful act; and (3) the TONC's nondisparagement provision did not violate Labor Code section 1102.5 and so was not an independently wrongful act. As initially discussed, we limited our review to resolve the first two issues.

## DISCUSSION

### A. *Section 16600*

Under the common law, as is still true in many states today, contractual restraints on the practice of a profession, business, or trade, were considered valid, as long as they were reasonably imposed. (*Bosley Medical Group v. Abramson* (1984) 161 Cal.App.3d 284, 288 [207 Cal.Rptr. 477].) This was true even in California. (*Wright v. Ryder* (1868) 36 Cal. 342, 357 [relaxing original common law rule that all restraints on trade were invalid in recognition of increasing population and competition in trade].) However, in 1872 California settled public policy in favor of open competition, and rejected the common law "rule of reasonableness," when the Legislature enacted the Civil Code. (Civ. Code, former § 1673, repealed by Stats. 1941, ch. 526, § 2, p. 1847, and enacted as Bus. & Prof. Code, § 16600, Stats. 1941, ch. 526, § 1, p. 1834; *Bosley, supra*, 161 Cal.App.3d at p. 288.)[3] Today in California, covenants not to compete are void, subject to several exceptions discussed briefly below.

Section 16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The chapter excepts

---

[3] Prior to oral argument, we granted Andersen's request that we take judicial notice of various documents providing information on the history of section 16600 and its predecessor statutes. (Evid. Code, §§ 452, 453, 459.)

noncompetition agreements in the sale or dissolution of corporations (§ 16601), partnerships (*ibid.*; § 16602), and limited liability corporations (§ 16602.5). In the years since its original enactment as Civil Code section 1673, our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. (See *D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 933 [102 Cal.Rptr.2d 495].) The law protects Californians and ensures "that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859 [27 Cal.Rptr.2d 573].) It protects "the important legal right of persons to engage in businesses and occupations of their choosing." (*Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1520 [66 Cal.Rptr.2d 731].)

This court has invalidated an otherwise narrowly tailored agreement as an improper restraint under section 16600 because it required a former employee to forfeit his pension rights on commencing work for a competitor. (*Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242–243 [42 Cal.Rptr. 107, 398 P.2d 147] (*Muggill*); *Chamberlain v. Augustine* (1916) 172 Cal. 285, 289 [156 P. 479] [invalidating contract with partial trade restriction].) In *Muggill*, the court reviewed an adverse judgment against a company's retired employee whose pension plan rights were terminated after the former employee commenced work for a competitor. (*Muggill*, at p. 240.) The retired employee had sued the former employer, seeking declaratory relief on the ground that the provision in the pension plan that terminated the retirement payments because the retiree went to work for a competitor was "against public policy and unenforceable." (*Ibid.*) *Muggill* held that, with exceptions not applicable here, section 16600 invalidates provisions in employment contracts and retirement pension plans that prohibit "an employee from working for a competitor after completion of his employment or imposing a penalty if he does so [citations] unless they are necessary to protect the employer's trade secrets [citation]." (*Muggill*, at p. 242.)[4] In sum, following the Legislature, this court generally condemns noncompetition agreements. (See, e.g., *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 123, fn. 12 [99 Cal.Rptr.2d 745, 6 P.3d 669] [such restraints on trade are "largely illegal"].)

■ Under the statute's plain meaning, therefore, an employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business unless the agreement falls within one of the exceptions to

---

[4] We do not here address the applicability of the so-called trade secret exception to section 16600, as Edwards does not dispute that portion of his agreement or contend that the provision of the noncompetition agreement prohibiting him from recruiting Andersen's employees violated section 16600.

the rule. (§ 16600.) Andersen, however, asserts that we should interpret the term "restrain" under section 16600 to mean simply to "prohibit," so that only contracts that totally prohibit an employee from engaging in his or her profession, trade, or business are illegal. It would then follow that a mere limitation on an employee's ability to practice his or her vocation would be permissible under section 16600, as long as it was reasonably based.

Andersen contends that some California courts have held that section 16600 (and its predecessor statutes, Civ. Code, former §§ 1673, 1674 & 1675) is the statutory embodiment of prior common law, and embraces the rule of reasonableness in evaluating competitive restraints. (See, e.g., *South Bay Radiology Medical Associates v. Asher* (1990) 220 Cal.App.3d 1074, 1080 [269 Cal.Rptr. 15] (*South Bay Radiology*) [§ 16600 embodies common law prohibition against restraints on trade]; *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 47–48 [6 Cal.Rptr.2d 602] (*Vacco*) [§ 16600 is codification of common law reasonable restraint rule].) Andersen claims that these cases show that section 16600 "prohibits only broad agreements that prevent a person from engaging entirely in his chosen business, trade or profession. Agreements that do not have this broad effect—but merely regulate some aspect of post-employment conduct, e.g., to prevent raiding [employer's personnel]—are not within the scope of [s]ection 16600."

As Edwards observes, however, the cases Andersen cites to support a relaxation of the statutory rule simply recognize that the statutory exceptions to section 16600 reflect the same exceptions to the rule against noncompetition agreements that were implied in the common law. For example, *South Bay Radiology* acknowledged the general prohibition against restraints on trade while applying the specific partnership dissolution exception of section 16602 to the facts of its case. (*South Bay Radiology, supra,* 220 Cal.App.3d at p. 1080.) In that case, the covenant not to compete was set forth in a partnership agreement to which the appellant doctor was a party. When the appellant's partnership with several other doctors dissolved due to his inability to work following an accident, he challenged the noncompete clause. The court found the partnership exception to section 16600 applicable. (*South Bay Radiology, supra,* at pp. 1078–1080.)

*Vacco* involved the sale of shares in a business, an exception to section 16600 found in section 16601. The Court of Appeal upheld an agreement not to compete made by a terminated employee who had sold all of his stock in the business for $500,000 prior to his termination. In applying the exception to section 16600, the court held that section 16601 "permits agreements not to compete made by a party selling the goodwill of a business or *all* of the shares of stock in a corporation." (*Vacco, supra,* 5 Cal.App.4th at p. 47.) As

the present Court of Appeal recognized, "Fairly read, the foregoing authorities suggest section 16600 embodies the original, strict common law antipathy toward restraints of trade, while the section 16601 and 16602 exceptions incorporated the later common law 'rule of reasonableness' in instances where those exceptions apply."

■ We conclude that Andersen's noncompetition agreement was invalid. As the Court of Appeal observed, "The first challenged clause prohibited Edwards, for an 18-month period, from performing professional services of the type he had provided while at Andersen, for any client on whose account he had worked during 18 months prior to his termination. The second challenged clause prohibited Edwards, for a year after termination, from 'soliciting,' defined by the agreement as providing professional services to any client of Andersen's Los Angeles office." The agreement restricted Edwards from performing work for Andersen's Los Angeles clients and therefore restricted his ability to practice his accounting profession. (See *Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4th 1425, 1429 [7 Cal.Rptr.3d 427] [distinguishing "trade-route" and solicitation cases that protect trade secrets or confidential proprietary information].) The noncompetition agreement that Edwards was required to sign before commencing employment with Andersen was therefore invalid because it restrained his ability to practice his profession. (See *Muggill, supra,* 62 Cal.2d at pp. 242–243.)

### B. Ninth Circuit's Narrow-restraint Exception

Andersen asks this court to adopt the limited or "narrow-restraint" exception to section 16600 that the Ninth Circuit discussed in *Campbell v. Trustees of Leland Stanford Jr. Univ.* (9th Cir. 1987) 817 F.2d 499 (*Campbell*), and that the trial court relied on in this case in order to uphold the noncompetition agreement. In *Campbell,* the Ninth Circuit acknowledged that California has rejected the common law "rule of reasonableness" with respect to restraints upon the ability to pursue a profession, but concluded that section 16600 "only makes illegal those restraints which preclude one from engaging in a lawful profession, trade, or business." (*Campbell, supra,* 817 F.2d at p. 502.) The court remanded the case to the district court in order to allow the employee to prove that the noncompetition agreement at issue completely restrained him from practicing his " 'profession, trade, or business, within the meaning of section 16600.' " (*Campbell,* at p. 503.)

The confusion over the Ninth Circuit's application of section 16600 arose in a paragraph in *Campbell,* in which the court noted that some California courts have excepted application of section 16600 " 'where one is barred from pursuing only a small or limited part of the business, trade or profession.' " (*Campbell, supra,* 817 F.2d at p. 502.) The Ninth Circuit cited two

California cases that it believed may have carved out such an exception to section 16600. (See *Boughton v. Socony Mobil Oil Co.* (1964) 231 Cal.App.2d 188 [41 Cal.Rptr. 714] (*Boughton*) [interpreting deed restriction on land use]; *King v. Gerold* (1952) 109 Cal.App.2d 316 [240 P.2d 710] (*King*) [rejecting manufacturer's argument that clause not to produce its product after license expiration was not an illegal restraint under § 16600].) Andersen relies on those cases, citing them as the underpinnings of the Ninth Circuit's exception to section 16600, and urges the court to adopt their reasoning here.

As the Court of Appeal observed, however, the analyses in *Boughton* and *King* do not provide persuasive support for adopting the narrow-restraint exception. In *Boughton*, the restriction was not upon the plaintiff's practice of a profession or trade, but took the form of a covenant in a deed to a parcel of land that specified the land could not be used as a gasoline service station for a specified time period. (*Boughton, supra,* 231 Cal.App.2d 188.) Because the case involved the use of the land, section 16600 was not implicated. Of note is the fact that *Boughton* relied on *King*, an unfair competition case in which the court applied a trade secret exception to the statutory rule against noncompetition clauses. (*King, supra,* 109 Cal.App.2d 316.) In *King*, the plaintiff was not simply engaged in the manufacture and sale of goods (house trailers) but was allegedly using a trailer design substantially similar to his former employer's, the inventor of the design. (*Id.* at p. 318.)

Andersen is correct, however, that *Campbell* has been followed in some recent Ninth Circuit cases to create a narrow-restraint exception to section 16600 in federal court. For example, *International Business Machines Corp. v. Bajorek* (9th Cir. 1999) 191 F.3d 1033, upheld an agreement mandating that an employee forfeit stock options if employed by a competitor within six months of leaving employment. *General Commercial Packaging v. TPS Package* (9th Cir. 1997) 126 F.3d 1131, held that a bargained-for contractual provision barring one party from courting a specific named customer was not an illegal restraint of trade prohibited by section 16600, because it did not "entirely preclude[]" the party from pursuing its trade or business. (*General Commercial Packaging v. TPS Package, supra,* 126 F.3d at p. 1133.)

■ Contrary to Andersen's belief, however, California courts have not embraced the Ninth Circuit's narrow-restraint exception. Indeed, no reported California state court decision has endorsed the Ninth Circuit's reasoning, and we are of the view that California courts "have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." (*Scott v. Snelling and Snelling,*

*Inc.* (N.D.Cal. 1990) 732 F.Supp. 1034, 1042.)[5] Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect. ■ We reject Andersen's contention that we should adopt a narrow-restraint exception to section 16600 and leave it to the Legislature, if it chooses, either to relax the statutory restrictions or adopt additional exceptions to the prohibition-against-restraint rule under section 16600.

### C.  *Contract Provision Releasing "Any and All" Claims*

■ Edwards was not terminated from Andersen for refusing to sign the noncompetition agreement. Rather, Andersen made it a condition of Edwards's obtaining employment with HSBC that Edwards execute the TONC, releasing Andersen from, among other things, "any and all" claims, including "claims that in any way arise from or out of, are based upon or relate to [Edwards's] employment by, association with or compensation from" Andersen. As the Court of Appeal held, to the extent Andersen demanded Edwards execute the TONC as consideration for release of the invalid provisions of the noncompetition agreement, such demand could be considered a wrongful act for purposes of his claim for interference with prospective economic advantage. An employer "cannot lawfully make the signing of an employment agreement, which contains an unenforceable covenant not to compete, a condition of continued employment . . . . [A]n employer's termination of an employee who refuses to sign such an agreement constitutes a wrongful termination in violation of public policy." (*D'Sa v. Playhut, Inc., supra,* 85 Cal.App.4th at p. 929.)

More important here, however, are the provisions of the TONC that purport to release Andersen from liability for claims arising out of Edwards's employment with that company. These are the provisions that Edwards contested in the appellate court. As is a fairly typical practice, at the time of his separation from Andersen, Edwards was asked to execute a broad general release in Andersen's favor. Section (1)(d) of the TONC provided that Edwards must release and discharge Andersen from "any and all actions, causes of action, claims, demands, debts, damages, costs, losses, penalties, attorneys' fees, obligations, judgments, expenses, compensation or liabilities of any nature whatsoever, in law or equity, whether known or unknown, contingent or otherwise, that Employee now has, may have ever had in the

---

[5] As noted, the Ninth Circuit's reading of *Boughton, supra,* 231 Cal.App.2d 188, and *King, supra,* 109 Cal.App.2d 316 may be the source of that circuit's narrow-restraint exception to section 16600. We are not persuaded that *Boughton* or *King* provides any guidance on the issue of noncompetition agreements, largely because neither involved noncompetition agreements in the employment context. However, to the extent they are inconsistent with our analysis, we disapprove *Boughton v. Socony Mobil Oil Co., supra,* 231 Cal.App.2d 188, and *King v. Gerold, supra,* 109 Cal.App.2d 316.

past or may have in the future against any of the Released Parties by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause, or thing that has occurred from the beginning of time up to and including the date hereof, including, without limitation, claims that in any way arise from or out of, are based upon or relate to Employee's employment by, association with or compensation from [Andersen] or any of its affiliated firms, except for claims (i) arising out of [Andersen's] obligations set forth in this agreement or (ii) for any accrued and unpaid salary or other employee benefit or compensation owing to Employee as of the date hereof." The trial court concluded that on the issue of waiver of indemnity, the TONC was a typical broad release that did not request indemnity rights be waived. The court added that "the Labor Code pretty much tells us that right can't be waived. As a matter of law, any provision in the release that attempts to waive it would be void." The court concluded that it did not have to reach the question because the release did not require Edwards to "give up his rights as a matter of law."

The Court of Appeal disagreed. It concluded that the TONC's plain language did indeed implicitly waive Edwards's Labor Code section 2802, subdivision (a), indemnity rights, and that Andersen could not make Edwards's future employment contingent on his waiving the statutorily mandated rights. As we explain, we disagree with the Court of Appeal on this point.

Labor Code section 2802, subdivision (a), provides for an employee's right to indemnity. That subdivision reads: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." (*Ibid.*)

Labor Code section 2804 voids any agreement to waive the protections of Labor Code section 2802 as against public policy. Labor Code section 2804 provides, "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, *is null and void*, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State." (Italics added.) ■ Courts have interpreted Labor Code section 2804 to apply to Labor Code section 2802, making all contracts that waive an employee's right to indemnification null and void. (See *Liberio v. Vidal* (1966) 240 Cal.App.2d 273, 276, fn. 1 [49 Cal.Rptr. 520].) Thus, indemnity rights

are nonwaivable, and any contract that does purport to waive an employee's indemnity right would be contrary to the law and therefore unlawful to that extent.[6]

"California has a strong public policy that favors the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment." (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2007) ¶ 3:1, p. 3-1 (rev. # 1, 2007).) Labor Code section 2802 codifies this policy and gives an employee a right to indemnification from his or her employer. (See *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 59–60 [1 Cal.Rptr.2d 808] [the purpose of Lab. Code, § 2802 is "to protect employees from suffering expenses in direct consequence of doing their jobs"]; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 74, fn. 24 [53 Cal.Rptr.2d 741] [Lab. Code, § 2802 "shows a legislative intent that duty-related losses ultimately fall on the business enterprise, not on the individual employee"].)

Edwards asserts that the TONC's language releasing "any and all" claims encompassed his statutorily nonwaivable right to indemnification under Labor Code section 2802, thus amounting to an independent wrongful act that would support his intentional interference with prospective economic advantage claim. The Court of Appeal agreed with Edwards, concluding that although the TONC did not reference the right to indemnity, it did not have to because those rights were "necessarily encompassed within the clear terms of the broad release." The Court of Appeal found it especially telling that Labor Code section 2802 requires indemnification for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," and that the TONC waives claims for losses, costs, and expenditures "of any nature whatsoever."

Although the Court of Appeal noted that the TONC did not expressly waive Edwards's indemnity rights, the court cited *Bardin v. Lockheed Aeronautical Systems Co.* (1999) 70 Cal.App.4th 494, 505 [82 Cal.Rptr.2d 726] (*Bardin*), for the rule that "[a] broadly worded release covers all claims within the scope of the language, even if the particular claim is not expressly listed." In *Bardin*, the appellant, Bethany Bardin, applied for a job with the Los Angeles Police Department (LAPD). The LAPD performed an investigation into Bardin's background, in the course of which it obtained information from her former employer, Lockheed Martin Corporation (Lockheed). (*Id.* at pp. 497–498.) When applying to the LAPD, Bardin signed a "Release and Waiver" form that "released any former employer from 'any or all liability

---

[6] Webster's Ninth New Collegiate Dictionary (1991) at page 1459 defines "unlawful" as "not lawful; *contrary to law*; illegal." (Italics added.)

for damage of whatever kind, which may at any time result to [appellant], . . . because of compliance with this authorization and request to release information . . . .' " (*Id.* at p. 498.) When the LAPD did not offer her a job, Bardin sued Lockheed, claiming it provided the LAPD with misleading negative information that caused the LAPD to reject her employment application. (*Id.* at pp. 498–499.) Bardin claimed that the release did not "expressly release respondents from disseminating false or baseless statements," but the court disagreed, finding that the release "broadly and unambiguously releases a former employer '*from any and all liability for damage of whatever kind* . . . .' " (*Id.* at p. 505.)

The language "any and all" is common to both the release in *Bardin* and the release in the present case (and is common to most release agreements). In addition, the remaining language in both releases is generally similar. But the rights being released in each are entirely different. Unlike the rights at issue in *Bardin*, the indemnity rights in the present case are nonwaivable under Labor Code section 2802, and any agreement or release that attempts to waive those rights is unlawful. Therefore, the fact that we must interpret those rights as within the scope of the phrase "any and all," makes *Bardin* inapposite here.

In contrast to the release in *Bardin*, the TONC at issue here expressly excepted two types of claims from release. The first were claims arising from the TONC itself. The second was for "any accrued and unpaid salary or other employee benefit or compensation owing to Employee as of the date hereof." The Court of Appeal believed that indemnity rights did not fall within either of these exceptions and, even if the right to indemnification did qualify as compensation, the release remained invalid because its exception applied only to compensation owed as of the date of the agreement, a clause that would have improperly waived Edwards's right to future indemnity claims under Labor Code section 2802. The court also noted that, because the release expressly excepted two types of claims but did not expressly exempt indemnification rights, the release intended to waive those rights. As we explain, under Labor Code section 2802, a contract provision releasing "any and all" claims generally does not encompass nonwaivable statutory protections, and in particular does not implicitly apply to an employee's right to indemnification from the employer.

■ "Where the language of a contract is clear and not absurd, it will be followed. [Citations.] But if the meaning is uncertain, the general rules of interpretation are to be applied." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 741, p. 827; see Civ. Code, §§ 1637, 1638; see also *Sierra Vista Regional Medical Center v. Bonta* (2003) 107 Cal.App.4th 237, 245–246 [132 Cal.Rptr.2d 9].) Here the meaning is in dispute and uncertain; we must therefore decide what the phrase "any and all" means. ■ "If a contract

is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect . . . ." (*Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 160 [338 P.2d 907]; see also *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 411 [29 Cal.Rptr.3d 881]; *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, 278 [219 Cal.Rptr. 836]; Civ. Code, §§ 3541 ["[a]n interpretation which gives effect is preferred to one which makes void"], 1643 ["[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect . . ."].)

The TONC did not expressly reference indemnity rights, and we should not read it as encompassing a waiver of Edwards's indemnity rights. Giving the TONC such a reading is consistent with the tenets of contractual interpretation because it makes the contract lawful, valid and capable of being carried into effect. In addition, our conclusion makes it unnecessary to insert additional language or terms into the contract, which is consistent with Code of Civil Procedure section 1858 and its mandate that when courts construe an instrument, a judge is "not to insert what has been omitted, or to omit what has been inserted . . . ." "[I]t is one of the cardinal rules of interpreting an instrument to give it such construction as will make it effective rather than void." (*Toland v. Toland* (1898) 123 Cal. 140, 143 [55 P. 681].) We apply this rule in holding that a contract provision releasing "any and all" claims, such as that used in the TONC in the present case, does not encompass nonwaivable statutory protections, such as the employee indemnity protection of Labor Code section 2802. In so holding, we interpret the TONC such that it does not violate Labor Code section 2804. As a consequence, the TONC is neither unlawful nor null and void.

Even if we ignored the above principles of contract interpretation, we would still find that releasing "any and all" claims does not implicate Edwards's nonwaivable right to indemnity. Andersen contends it did not except indemnity rights from the release because it was aware that under Labor Code section 2804, such rights are statutorily nonwaivable. Andersen asserts essentially that such an exception was legally unnecessary. California case law arguably supports Andersen's contention. " ' "[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." [Citation.]' " (*Torrance v. Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 378 [185 Cal.Rptr. 645, 650 P.2d 1162], quoting *Alpha Beta Food Markets v. Retail Clerks* (1955) 45 Cal.2d 764, 771 [291 P.2d 433].) This means that when we interpret the TONC, we could presume that Andersen knew Edwards's indemnity rights were statutorily nonwaivable. It also means we may treat the TONC as if it expressly includes the substance of Labor Code section 2804: that no

employee's right to indemnification, to which he or she is entitled under the law, can be waived. (*Liberio v. Vidal, supra*, 240 Cal.App.2d at p. 276 & fn. 1.) Therefore, the waiver of "any and all" claims would not encompass the right to indemnification, because we treat the TONC as expressly incorporating the law that the employee cannot waive that right.[7]

Edwards suggests contract drafters could easily fix the overbroad release problem by including the clause "except as otherwise prohibited by law" after "any and all." We fail to see what difference this would make. The phrase "except as otherwise prohibited by law" is vague and essentially informs the employee of nothing. In addition, it appears most practitioners already operate with the understanding that such releases do not encompass items "otherwise prohibited by law." If they do, they are null and void under the Labor Code. Therefore, we believe that voiding all existing releases which include the language "any and all" is inappropriate.

We conclude that a contract provision releasing "any and all" claims does not encompass nonwaivable statutory protections, such as the employee indemnity protection of Labor Code section 2802 and, accordingly, is not void under Labor Code section 2804.

## DISPOSITION

We hold that the noncompetition agreement here is invalid under section 16600, and we reject the narrow-restraint exception urged by Andersen. Noncompetition agreements are invalid under section 16600 in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions of section 16601, 16602, or 16602.5. In addition, we conclude that the TONC at issue in this case did not purport to release Andersen from any nonwaivable statutory claims and therefore is not unlawful under Labor Code sections 2802 and 2804.

We therefore affirm in part and reverse in part the Court of Appeal judgment, and remand the matter for proceedings consistent with the views expressed above.

George, C. J., Baxter, J., Moreno, J., and Corrigan, J., concurred.

---

[7] Our holding that contracts ordinarily are presumed to incorporate statutory requirements and that the TONC here was not per se unlawful, does not preclude Edwards from offering proof on remand of facts that might prove the exception to the general rule based on Andersen's conduct. We express no opinion concerning the merits of such a claim, which alleges a factual theory that is independent of the legal theory the trial court resolved and that we review in this opinion.

**KENNARD, J.,** Concurring and Dissenting.—Plaintiff Raymond Edwards II, a certified public accountant, was employed by defendant Arthur Andersen LLP, in its Los Angeles office as a tax manager, and he was eventually promoted to senior manager. When Edwards was hired in 1997, Andersen insisted that he sign a noncompetition agreement that barred him from leaving Andersen and (during the subsequent 18 months) performing the same professional services for any of the same clients.

In the wake of the Enron scandal, Andersen sold its domestic accounting practice to various purchasers. HSBC USA, Inc. (HSBC), agreed to purchase Edwards's practice group. As part of this purchase, employees in Edwards's practice group would resign from Andersen and they would be offered employment at HSBC, where they would perform the same duties they had previously performed at Andersen, but, to do so, they first needed to sign a "Termination of Non-compete Agreement" (TONC). The TONC was a general release of claims against Andersen, in exchange for which Andersen would release the employees from the noncompetition agreement, thereby freeing the employees to advise the same clients on behalf of their new employer.

Edwards explains in his brief that he "was painfully aware that he was exposed to potential liability by Andersen's marketing of disallowed tax shelters, and [therefore] he specifically raised the issue of waiver of his indemnification rights when Andersen presented him with the release." Andersen, however, insisted that he sign the release. When Edwards refused to do so, Andersen terminated him without paying severance benefits, and HSBC withdrew its offer of employment.

Edwards sued Andersen, HSBC, and an HSBC subsidiary. After he settled with HSBC and the subsidiary, and after the trial court sustained a demurrer to Edwards's claim under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.), his only remaining claim against Andersen was for intentional interference with prospective economic advantage. One element of this tort is that the act of interference be wrongful for a reason independent of the interference itself. (See *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392–393 [45 Cal.Rptr.2d 436, 902 P.2d 740].) Among other things, Edwards asserted that the 1997 noncompetition agreement was invalid under Business and Professions Code section 16600, and it was therefore wrongful for Andersen to require him to sign the TONC as a condition for releasing him from the invalid noncompetition agreement. Edwards also asserted that releases of employee indemnity rights are "null and void" under Labor Code sections 2802 and 2804, and it was therefore wrongful for Andersen to include in the TONC a release of such rights.

The trial court held a bifurcated trial on the issue of the validity of the 1997 noncompetition agreement and the TONC. Without taking evidence, the court found both agreements valid as a matter of law, and it granted judgment in favor of Andersen. The Court of Appeal reversed, concluding that both the noncompetition agreement and the TONC were invalid and that Andersen's actions were therefore wrongful.

The majority affirms in part and reverses in part the judgment of the Court of Appeal. The majority agrees with the Court of Appeal that the noncompetition agreement was invalid under Business and Professions Code section 16600 (maj. opn., *ante*, at pp. 945–950) and concludes that "to the extent Andersen demanded Edwards execute the TONC as consideration for release of the invalid provisions of the noncompetition agreement, such demand could be considered a wrongful act for purposes of his claim for interference with prospective economic advantage" (*id.* at p. 950). I agree.

The majority, however, disagrees with the Court of Appeal's conclusion that the TONC was invalid. (Maj. opn., *ante*, at pp. 950–955.) On this point, I disagree with the majority.

The majority focuses on the TONC's use of the words "any and all . . . claims," concluding that the phrase is ambiguous (maj. opn., *ante*, at p. 953) and should be interpreted narrowly to make the release "valid and capable of being carried into effect" (*id.* at p. 954). On that basis, the majority concludes that the words "any and all" were not intended to encompass within the release's scope indemnity claims that under Labor Code sections 2802 and 2804 are not subject to release. (Maj. opn., *ante*, at p. 954.) The majority finds persuasive Andersen's argument that the TONC did not need to include an express exception preserving these indemnity claims because these indemnity rights are statutorily nonwaivable. (*Id.* at pp. 954–955.) Thus, the majority reads the TONC "as if it expressly includes the substance of Labor Code section 2804: that no employee's right to indemnification, to which he or she is entitled under the law, can be waived." (Maj. opn., *ante*, at pp. 954–955.)

But the majority fails to analyze the language of the TONC that most strongly supports Edwards's argument. The TONC did not merely require Edwards to release Andersen from "any and all" claims; it specifically required Edwards to release Andersen from "any and all . . . *losses* [or] . . . *expenses* . . . including . . . *claims that . . . arise from . . . employment* . . . ." (Italics added.) This language closely tracks Labor Code section 2802, subdivision (a), which requires an employer to indemnify an employee "for all necessary *expenditures* or *losses* incurred by the employee *in direct consequence of the discharge of his or her duties* . . . ." (Italics added.) Thus, although it is true that the TONC did not use the words "indemnity claims"

and did not mention Labor Code section 2802, it unambiguously required Edwards to release the precise indemnity rights that Labor Code section 2802 grants him.

Andersen argues in effect that the TONC was a standard release of "any and all" claims and that the TONC failed to spell out a special exception preserving indemnity claims, but that in light of Labor Code sections 2802 and 2804, the exception was implied. That argument, however, mischaracterizes the TONC. The TONC was not a vague general release whose only shortcoming was the failure to include a special exception preserving indemnity claims; rather, the TONC used language *expressly releasing the precise indemnity claims that the Labor Code preserves*. Therefore, this court should not lightly dismiss the Court of Appeal's conclusion that Andersen may have wanted its employees to *think* they had released their indemnity rights, although it knew that any release of such rights was void. As the Court of Appeal explained, quoting from *Latona v. Aetna U.S. Healthcare Inc.* (C.D.Cal. 1999) 82 F.Supp.2d 1089, 1096: " '[D]efendant's argument, that the Agreement cannot violate public policy because . . . it is simply a nullity, ignores the realities of the marketplace. . . . Employees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer . . . are legal, if draconian. . . . Thus, the *in terrorem* effect of the Agreement will tend to secure employee compliance with its illegal terms in the vast majority of cases.' "

This latter point goes directly to the independent *wrongfulness* of Andersen's conduct, which is a critical issue for purposes of Edwards's claim of intentional interference with prospective economic advantage. Labor Code section 2804 states that an agreement is "null and void" if it waives the indemnity rights set forth in Labor Code section 2802, and it prescribes no other penalty. Therefore, Andersen asserts that, even if the TONC is overbroad, Andersen's conduct in asking Edwards to sign the TONC was not wrongful; rather, the release is merely "null and void" to the extent of its overbreadth. I disagree.

If Andersen had merely drafted a vague general release without specifically describing indemnity claims, I would conclude, as does the majority, that Andersen's actions were taken in good faith and that the release's broad language should be read in light of existing law, making it "null and void" (Lab. Code, § 2804) to the extent the release's provisions might be read to cover nonwaivable rights. But instead Andersen drafted a release that expressly released specific claims (employment-related losses and expenses) that Andersen *knew were not subject to release*. As the Court of Appeal

observed, Andersen's actions suggest a possible purpose of misleading employees into thinking they had waived rights that could not be waived, thereby minimizing the number of indemnity claims these employees might bring against Andersen.

In my view, Andersen's insistence that Edwards sign the TONC was sufficiently wrongful to support Edwards's claim of intentional interference with prospective economic advantage. I would therefore affirm the judgment of the Court of Appeal in its entirety.

Werdegar, J., concurred.